IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01646-CMA-CBS

COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit Corporation, and
DAISY MIDTHUN,

      Plaintiffs,

v.

HCA - HEALTHONE LLC d/b/a SWEDISH MEDICAL CENTER,

      Defendant.

---

## CONSENT DECREE

---

Plaintiffs Colorado Cross-Disability Coalition ("CCDC") and Daisy Midthun
(" Plaintiffs"), and Defendant HCA - HealthONE LLC d/b/a Swedish Medical Center
("Defendant") have consented to entry of the following Order:

## I. BACKGROUND

A.      On July 12, 2010, Plaintiffs filed a lawsuit pursuant to title III of the Americans
with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189; implementing
regulation, 28 C.F.R. Part 36; section 504 of the Rehabilitation Act ("the Rehabilitation
Act"), 29 U.S.C. § 794; and implementing regulation, 45 C.F.R. Part 84.   Plaintiffs
alleged that the Defendant violated title III of the ADA and the Rehabilitation Act by
discriminating on the basis of disability against persons who are deaf. *Colorado Cross-
Disability Coalition et al. v. HCA HealthONE, LLC d/b/a Swedish Hospital,* Civil Action
No. 10-cv-01646-CMA-CBS ("Litigation"). The complaint alleged, *inter alia,* that the
Defendant did not provide qualified sign language interpreters and/or other appropriate
auxiliary aids and services to Plaintiff Daisy Midthun who is deaf either in the
Emergency Department or during her hospitalization.   Defendant has denied the
allegations.

B.      Defendant owns and operates Swedish Medical Center, a place of public
accommodation covered by title III of the ADA, 42 U.S.C. § 12181(7)(F), and its
implementing regulation, 28 C.F.R. § 36.104.   Defendant is also a recipient of federal
financial assistance and is, therefore, covered by Section 504 of the Rehabilitation Act,
29 U.S.C. § 794, and implementing regulation, 45 C.F.R. Part 84.   Defendant is

committed to satisfy its statutory requirements and fulfill its responsibilities to provide medical services to members of the community without discrimination on the basis of disability.

C.     Plaintiff and Defendant (collectively "the Parties"), after good-faith negotiations, have determined that the Litigation should be resolved through this Consent Decree.

D.     Therefore, the Parties have consented to this Consent Decree, as indicated by the signatures appearing below.

E.     In consideration of the terms of this Consent Decree, and in order to secure compliance by voluntary means and avoid the costs of litigation, the Parties hereby agree as follows:

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III. DEFINITIONS

A.     The term "appropriate auxiliary aids and services" includes, for example, qualified sign language, oral, or relay interpreters (either appearing in person or through video interpreting services), note takers, computer-assisted real time transcription services, written materials, the exchange of handwritten notes, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, TTY's (see definition *infra*), acquisition or modification of equipment or devices, video interpreting services, and other methods of delivering effective communication to individuals with hearing impairments.

B.     The term "Companion" means a person who is (1) deaf or hard of hearing and who accompanies a deaf or hard of hearing Patient, or (2) deaf or hard of hearing and who accompanies a hearing Patient, or (3) hearing and who accompanies a deaf or hard of hearing Patient; and who is (I) legally authorized to make health care decisions on behalf of the Patient, or (ii) designated by the Patient to communicate, or circumstances otherwise indicate should communicate, with Swedish Medical Center personnel about the Patient, the Patient's needs, condition, history, or symptoms, or (iii) authorized to help the Patient act on information or instructions by Swedish Medical Center personnel, or (iv) the Patient's next of kin or health care surrogate or such

person with whom the Swedish Medical Center personnel ordinarily and regularly communicate concerning the Patient's medical condition and medical advice.

C.     The term "date of this [Consent] Decree" means the date on which this Consent Decree is entered by the Court.

D.     The term "Swedish Medical Center" means the business/es owned and operated by HCA - HealthONE, LLC doing business under that name, including, without limitation, the hospital, located at 501 East Hampden Avenue, Englewood, Colorado 80113, and all related facilities on that campus, and the Swedish Medical Center Southwest Health Park, located at 6169 S. Balsam Ave., Littleton, CO 80123, and all related facilities on that campus, and any other facilities currently operated as Swedish Medical Center or that will be operated as Swedish Medical Center during the term of this Consent Decree.

E.     The term "Swedish Medical Center Personnel" means all employees of Swedish Medical Center, including, without limitation, nurses, physicians, social workers, technicians, admitting personnel, billing staff, and therapists,  who have or are likely to have direct contact with "Patients" or "Companions," as defined herein.  Only persons directly employed by Swedish Medical Center are included in this definition.

F.     The term "Patient" means a person who is seeking and/or receiving medical services at Swedish Medical Center.

G.     The term "Qualified Interpreter" shall include "sign language interpreters," "oral interpreter," or other "interpreters" who are able to interpret competently, accurately, and impartially, both receptively and expressively, using any specialized terminology necessary for effective communication in a hospital setting to a Patient or a Companion.

H.     The term "TTY's" means devices that are used with a telephone to communicate with persons who are deaf or hard of hearing by typing and reading communications.

I.     The term "VIS" means video interpreting services using video conference technology that provides effective communication and complies with regulations and rules promulgated by the United States Department of Justice.

## IV.  INJUNCTIVE RELIEF

1.     General Obligations

a.      Program to Provide Appropriate Auxiliary Aids and Services. Within forty-five days of the date of this Consent Decree, Defendant shall modify, publish, and describe its program for providing auxiliary aids and services ("Program") to implement effectively the provisions of this Consent Decree, including, without limitation:

b.      Developing and/or revising and coordinating specific procedures to implement fully this Consent Decree, including the revised policies attached as Exhibit 1 to this Consent Decree;

c.      Scheduling, announcing and promoting all training required by this Consent Decree;

d.      Developing a plan for drafting, maintaining and providing all reports required by this Consent Decree;

e.      Designating a Nurse Supervisor(s) (by position or title) present twenty-four hours a day, seven days a week, within the hospital who will be responsible for securing appropriate auxiliary aids throughout Swedish Medical Center.

2.      Provision of Appropriate Auxiliary Aids and Services.

a.      During the term of this Decree, Swedish Medical Center shall continue to make on-site interpreters available, and

i.      Provide to Patients and Companions any appropriate auxiliary aids and services that may be necessary for effective communication after making the assessment described below, including, but not limited to, access to Qualified Interpreters appearing either in person at Swedish Medical Center or through video interpreting services, assistive listening devices, assistive listening systems, pictograph forms and flash cards, and computer-assisted real time transcription;

ii.     Continue to ensure that televisions with built-in captioning capability are available to deaf or hard or hearing Patients and Companions at no additional cost; and that the directions for use of the closed caption capability are clearly stated in the Patient Handbook (or equivalent publication) or otherwise available in each Patient room and public area containing a television with captioning capability.

3.     Communication Assessment. Swedish Medical Center will consult with individual Patients who are deaf or hard of hearing and Companions wherever possible to determine what type of auxiliary aid or interpretive service is needed to ensure effective communication.

4.     General Assessment Criteria. The assessment shall take into account all relevant facts and circumstances, including without limitation the following:

    a.     The nature, length and importance of the communication at issue;

    b.     The individual's communication skills and knowledge;

    c.     The Patient's health status or changes thereto;

    d.     The Patient's and/or Companion's request for or statement of need for an interpreter, including the Patient's or Companion's request for the provision of interpreting services through a video interpreting service or through an on-site interpreter; and

    e.     The reasonably foreseeable health care activities of the Patient at the facility (e.g., group therapy sessions, medical tests or procedures, rehabilitation services, meetings with health care professionals or social workers or discussions concerning billing, insurance, self-care, prognoses, diagnoses, history and discharge).

5.     Time for Assessment. The determination of which appropriate auxiliary aids and services are necessary for effective communication, and the timing, duration and frequency with which they shall be provided, will begin at the time an appointment is scheduled and the request for auxiliary aids and services is made, or upon arrival of the Patient or Companion at Swedish Medical Center, whichever is earlier.

6.     Maintenance of Log. Swedish Medical Center will maintain a log of (I) each request for an auxiliary aid or service; (ii) the type of auxiliary aid requested by the Patient or Companion; (iii) the type of auxiliary aid provided by Swedish Medical Center; (iv) the time and date the request is made; (v) the identity of the Patient and Companion in a manner that appropriately protects the confidentiality of the Patient; (vi) the name of Swedish Medical Center Personnel who performed any communication assessment or reassessment under Section IV (B); (vii) the name of Swedish Medical Center Personnel responsible for the determination of the auxiliary aid(s) or service(s) to be provided; (viii) the time and date of the scheduled appointment (if a scheduled appointment was made); (ix) the time and date the auxiliary aid and service was

provided, or a statement that the auxiliary aid and service was not provided and the basis for such determination.

7.      Complaint Resolution/Grievance Procedure. Swedish Medical Center shall maintain a written complaint resolution/grievance procedure regarding the provision, or lack thereof, of auxiliary aids and services to Patients and Companions. Swedish Medical Center shall maintain records of all complaints/grievances, whether oral or written, made to Swedish Medical Center and actions taken with respect thereto. Swedish Medical Center will post and continue to post at appropriate places, including but not limited to, the Emergency Department waiting room, the Emergency Department triage center, and the Registration room, its Patient Bill of Rights and Responsibilities, which notifies persons who are deaf or hard of hearing of Swedish Medical Center's complaint resolution/grievance procedure mechanism, to whom complaints should be made, and the right to receive a written response to the complaint if requested. Copies of all complaints/grievances or notes reflecting oral complaints/grievances and the responses thereto shall be maintained by Swedish Medical Center.  If Plaintiffs' counsel contacts Defendant's counsel regarding a complaint regarding Auxiliary Aids and Services, and provides a release of information from the person complaining, Defendant will make all non-privileged records available to Plaintiffs' counsel.

8.      Prohibition of Surcharges. All appropriate auxiliary aids and services required by this Consent Decree shall be provided free of charge to the Patient or Companion.

9.      Individual Notice In Absence of Request. If a Patient or a Companion does not request appropriate auxiliary aids or services but Swedish Medical Center Personnel, following the communication assessment required above, have reason to believe or conclude that such person would benefit from appropriate auxiliary aids or services for effective communication, Swedish Medical Center shall inform the person that appropriate auxiliary aids and services are available free of charge.

10.     Communication with Inpatients and Companions. Swedish Medical Center shall take appropriate steps to ensure that all Swedish Medical Center Personnel having direct healthcare responsibility for a patient or substantive communication with a companion are made aware of such person's disability so that effective communication with such person is achieved. Swedish Medical Center shall take appropriate steps to ensure that all Swedish Medical Center Personnel having contact with a Patient or Companion are aware of Swedish Medical Center's Program and policies.

## V. QUALIFIED INTERPRETERS

1.      Circumstances Under Which Interpreters Shall Be Provided. Swedish Medical Center shall provide Qualified Interpreters to Patients and Companions as necessary for effective communication for its programs, services, and activities. The determination of when such interpreters shall be provided to Patients or Companions shall be made as set forth in the Communication Assessment policy above. *Examples of circumstances when it is necessary to provide interpreters include, but are not limited to, the following:*

        a.      Determination of a Patient's medical history or description of ailment or injury;

        b.      Provision of Patients' rights, informed consent, or permission for treatment;

        c.      *Diagnosis or prognosis of ailments or injuries;*

        d.      Explanation of procedures, tests, treatment, treatment options, or surgery;

        e.      Explanation of medications prescribed (such as dosage, instructions for how and when the medication is to be taken and side effects or food or drug interactions);

        f.      Explanation regarding follow-up treatments, therapies, test results, or recovery;

        g.      Blood donations or apheresis (removal of blood components);

        h.      Discharge planning and discharge instructions;

        i.      Provision of mental health evaluations, group and individual therapy, counseling and other therapeutic activities, including grief counseling and crisis intervention;

        j.      Explanation of complex billing or insurance issues;

        k.      *Educational presentations, such as classes concerning birthing, nutrition, CPR, and weight management;*

        l.      Explanation of living wills or powers of attorney (or their availability);

        m.      Filing of administrative complaints or grievances against Swedish Medical

Page 7 of 18

Center or Swedish Medical Center Personnel; and

n.      Any other circumstance in which a qualified interpreter is necessary to ensure a Patient's privacy, confidentiality, or other rights provided by Federal, state, or local law.

2.      Method for Obtaining Qualified Interpreters.

a.      Swedish Medical Center shall maintain one or more contracts with an interpreter service provider(s) ("the IS Provider") to provide Qualified Interpreters at the request of Swedish Medical Center.

b.      Swedish Medical Center shall ensure that its IS Provider(s) will (I) provide Qualified Interpreters when requested by authorized personnel at Swedish Medical Center for a variety of situations, including but not limited to, Emergency Department visits, Patient/doctor consultations, admissions, outpatient visits, surgeries, Patient education programs, staff meetings and conferences; (ii) maintain a staff of nationally certified "on-call" interpreters who will be ready and able to respond to emergency and non-emergency requests 24 hours a day; (iii) maintain billing invoices regarding each assignment placed against the contract; (iv) provide one general contract training for nursing supervisors and patient advocates which will keep nursing supervisors and patient advocates updated on any service provider changes; (v) work with Swedish Medical Center representatives on procedures and periodic reviews of the system and its effectiveness; (vi) ensure an adequate level of staffing for each assignment, considering type and duration of interpreting services needed, as determined by Swedish Medical Center and the IS Provider; and (vii) ensure that interpreters adhere to strict professional standards of confidentiality with respect to Patient, facility and assignment related information, as required by Swedish Medical Center, HIPAA, the IS Provider and the Code of Ethics of the Registry of Interpreters for the Deaf, Inc. (RID).

3.      Provision of Interpreters in a Timely Manner

a.      Scheduled Appointments. For scheduled appointments (appointments scheduled two or more hours in advance, or four or more hours in advance if a request is made between the hours of 8 p.m. and 8 a.m. or a weekend or holiday), Swedish Medical Center shall make an interpreter available at the time of the scheduled appointment.

b.      Non-scheduled incidents. "Non-scheduled incidents" refer to all situations not covered by the definition of "scheduled appointment." For "non-scheduled incidents,"

Swedish Medical Center shall make an interpreter available as soon as practicable. However, the time within which the interpreter is provided shall be no more than (a) one hour from the time the request is made if the service is provided through a contract interpreting service or a staff interpreter who is located off-site at the time the need arises or (b) 30 minutes from the time the Patient's or Companion's request is made if the service is provided through VIS or a staff interpreter who is on-site at the time of the request or need for an interpreter.

4.    Notice to Patients and Companions. As soon as Swedish Medical Center Personnel have determined that an interpreter is necessary for effective communication with a Patient or a Companion, Swedish Medical Center shall inform such a person (or a family member or friend, if such Patient/Companion is not available) of the current status of efforts being taken to secure a qualified interpreter on his or her behalf. Additional updates shall be provided periodically thereafter until an interpreter is secured. Notification of efforts to secure a qualified interpreter does not lessen Swedish Medical Center's obligation to provide qualified interpreters in a timely manner as required by this Consent Decree.

5.    Other Means of Communication. Between the time when an interpreter is requested and when an interpreter is made available, Swedish Medical Center Personnel shall continue to try to communicate with the Patient or Companion for such purposes and to the same extent as they would have communicated with the person but for the disability, using the most effective means of communication, particularly written notes, or sign language pictographs. This provision in no way lessens Swedish Medical Center's obligation to provide qualified interpreters in a timely manner as required by this Consent Decree.

6.    Restricted Use of Certain Persons to Facilitate Communication. Due to considerations of confidentiality, potential emotional involvement, and other factors that may adversely affect the ability to facilitate communication, Swedish Medical Center will not require, coerce, or rely upon a family member, companion, caregiver, case manager, advocate, or friend of a deaf or hard of hearing Patient or Companion to interpret or facilitate communications between Swedish Medical Center Personnel and such Patient or Companion, except that such person may provide such assistance if (I) he or she wishes to do so and (ii) if the Patient or Companion provides written agreement to the use of such person to interpret or facilitate communication, and (iii) if such use is necessary or appropriate under the circumstances, giving appropriate consideration to any privacy issues that may arise; provided, however, that in time-sensitive life-threatening situations, Swedish Medical Center may rely upon communications through a Companion, or if the companion is deaf or hard of hearing,

through a family member, companion, caregiver, case manager, advocate, or friend of the Companion until a Qualified Interpreter is obtained.

7.      The foregoing requirements are subject to "force majeure" events. Force majeure events are events outside the reasonable control of Swedish Medical Center, the interpreter service provider or the interpreter called to respond, such as weather problems and other Acts of God, unanticipated illness or injury of the interpreter while en route to Swedish Medical Center, unanticipated Internet or telephone problems, and unanticipated transportation problems (including, without limitation, mechanical failure of the interpreter's automobile, automobile accidents and roadway obstructions, other than routine traffic or congestion).  Such events will excuse strict compliance with the forgoing requirements of this section; however, once Swedish Medical Center learns such an event has occurred, it must take all reasonable steps under the circumstances to comply with this section despite the event.

## VI. NOTICE TO COMMUNITY

1.      Policy Statement. Swedish Medical Center will post and maintain signs of conspicuous size and print at all Swedish Medical Center admitting stations, the Emergency Department, and wherever a Patient's Bill of Rights and Responsibilities is required by law to be posted. Such signs shall be to the following effect: Qualified Interpreters, TTY's, and other auxiliary aids and services are available free of charge to people who are deaf or hard of hearing. For assistance, please contact any Swedish Medical Center Personnel or the Patient Advocate at (303) 788-6406 (voice/TTY). These signs shall include the international symbols for "interpreters" and "TTY's."  A printed version of [this Policy Statement or Exhibit 1] shall be provided to any registered patient at Swedish Medical Center who is deaf or hard of hearing who does not receive the Patient Handbook. This includes the obligation to provide the written notice to a deaf or hard of hearing patient at Swedish Medical Center who is registered in the Emergency Department.

2.      Patient Handbook. Swedish Medical Center shall include in all future printings of its Patient Handbook (or equivalent) and all similar publications a statement to the following effect: To ensure effective communication with patients and their companions who are deaf or hard of hearing, we provide appropriate auxiliary aids and services free of charge, such as: sign language and oral interpreters, TTY's, note takers, written materials, telephone handset amplifiers, assistive listening devices and systems, telephones compatible with hearing aids, closed caption decoders, and open and closed captioning of most Swedish Medical Center programs. Please ask your nurse or other Swedish Medical Center personnel for assistance, or contact the Patient Advocate at

(303) 788-6406 (voice or TTY). Swedish Medical Center shall also include in the Patient Handbook a description of Swedish Medical Center's complaint resolution mechanism. Swedish Medical Center shall provide all Patients who are admitted to Swedish Medical Center a copy of the handbook.

3.      Website. Swedish Medical Center shall include in its website the statement referenced in Section 2, *supra.*

## VII. NOTICE TO SWEDISH MEDICAL CENTER PERSONNEL AND PHYSICIANS

1.      Within forty-five (45) days of entry of this Consent Decree, Swedish Medical Center shall publish its revised policies, attached as Exhibit 1 to this Consent Decree. Swedish Medical Center will print and maintain copies of these policies in a central location, in written form, provide these policies to any interested entity or individual requesting them, and incorporate the policies into its standard operating procedures.

2.      Swedish Medical Center shall publish, in appropriate form, the following notice regarding Swedish Medical Center's provision for providing effective communication with persons who are deaf or hard of hearing. The notice should include, but is not limited to, language to the following effect: If you recognize or have any reason to believe that a patient or companion of a patient is deaf or hard of hearing, you must advise the person that appropriate auxiliary aids and services such as sign language and oral interpreters, video interpreting services, TTY's, note takers, written materials, telephone handset amplifiers, assistive listening devices and systems, telephones compatible with hearing aids, closed caption decoders, and open and closed captioning of most Swedish Medical Center programs shall be provided free of charge. If you are the responsible health care provider, you must ensure that such aids and services are provided when appropriate. All other personnel should direct that person to the patient advocate, available at telephone extension 303 788-6406 _____. This offer and advice must likewise be made in response to any overt request for appropriate auxiliary aids or services.

3.      Swedish Medical Center will distribute the revised policies in subsection 2, attached as Exhibit 1 to this Consent Decree, within forty-five days after entry of this Consent Decree, to hospital personnel and to all new hospital personnel upon their employment with Swedish Medical Center.

## VIII. TRAINING OF SWEDISH MEDICAL CENTER PERSONNEL

1.      Emergency Department Personnel. Swedish Medical Center shall ensure that

mandatory in- service training is provided to all Swedish Medical Center Personnel with Patient responsibility who work or volunteer in the Emergency Department that addresses the special needs of deaf or hard of hearing Patients and Companions utilizing that department. This training will include the following objectives: to promptly identify communication needs and preferences of persons who are deaf or hard of hearing; to secure qualified interpreter services as quickly as possible when necessary, including training on any other available means of communication that shall augment the effectiveness of the communication; and an explanation of all policies described and/or modified pursuant to this Consent Decree. Swedish Medical Center shall ensure that such training is provided to all emergency department personnel prior to the date on which Swedish Medical Center is scheduled to implement the modified Program and annually thereafter.

2.      Psychiatric Personnel and Social Workers. Swedish Medical Center shall provide specialized mandatory in-service training to Swedish Medical Center Personnel with Patient responsibility who work in the Department of Psychiatry (or its equivalent, if any) or are members of the Social Work Department (or its equivalent). This training shall include the following objectives: to promptly identify communication needs and preferences of deaf or hard of hearing Patients and Companions; to secure qualified interpreter services as quickly as possible when necessary, including training regarding how to operate any video interpreting services equipment; to facilitate appropriate interaction between deaf or hard of hearing Patients and other Patients, when appropriate (e.g., group therapy sessions and other times when interaction with persons other than Swedish Medical Center Personnel is encouraged); and an explanation of all policies modified pursuant to this Consent Decree. Swedish Medical Center shall ensure that such training is provided, or if already provided, updated, prior to the date on which Swedish Medical Center is scheduled to implement the modified Program and annually thereafter.

3.      Other Key Personnel. Swedish Medical Center shall provide training to other Swedish Medical Center Personnel not otherwise trained as provided above who have direct contact with deaf or hard of hearing Patients, families of deaf or hard of hearing Patients, and Companions, to include all clinical directors and nursing supervisors; all senior-level administrators; personnel who staff the Admission/Registration desk (or its equivalent for in-patient registration); all triage nurses and other triage professionals; and heads of each department in which communication with Patients occurs. Swedish Medical Center shall provide to personnel responsible for billing and insurance issues who routinely interact with Patients and Companions training on the availability of auxiliary aids and services and the existence in Swedish Medical Center of a Patient Advocate and Administrator(s). Swedish Medical Center shall ensure that such training

is provided, or if already provided, updated prior to the date on which Swedish Medical Center is scheduled to implement the modified Program and annually thereafter.

4.      Operators. Swedish Medical Center shall provide to Swedish Medical Center Personnel whose duty it is to receive telephone calls from the public, special instructions on using telecommunication relay services, including, but not limited to, TTY's and the Colorado Relay Service to make and receive telephone calls and training generally on the existence in Swedish Medical Center of an Patient Advocate and Administrator(s) and complaint resolution processes. Swedish Medical Center shall ensure that such training is provided, or if already provided, updated prior to the date on which Swedish Medical Center is scheduled to implement the modified Program and annually thereafter.

5.      Physicians. Written Materials. Within sixty (60) days of the entry of this Consent Decree, Swedish Medical Center shall distribute a set of materials to all employed physicians. These materials shall contain at least the following: Swedish Medical Center's policies revised pursuant to this Consent Decree; any relevant forms; a description of the Swedish Medical Center's Program and a request that physicians' staff members notify the Swedish Medical Center about deaf or hard of hearing Patients and Companions as soon as they schedule admissions, tests, surgeries or other health care services at the Swedish Medical Center.  In addition, if Swedish Medical Center policies are further modified pursuant to this Consent Decree, Swedish Medical Center shall publish in its newsletter to physicians that resources are available for hearing impaired patients and that physicians should contact the nursing  supervisor for assistance within sixty (60) days of the entry of this Consent Decree.

6.      Other Personnel. Swedish Medical Center shall develop and implement an internal program that shall provide appropriate training to all Swedish Medical Center Personnel not trained under the preceding sections who should be trained in order to meet the obligations under this Consent Decree. This training shall take place at such times as may be necessary to permit Swedish Medical Center to meet all of its obligations under this Consent Decree.

7.      General Provisions. Swedish Medical Center will provide the training specified above to new Swedish Medical Center Personnel (including without limitation Emergency Department, Psychiatric and Social Work personnel) as part of any Orientation. Such training will be comparable to training provided to specific departments as necessary. Watching a videotaped recording of the entire original training shall suffice to meet this obligation. Swedish Medical Center shall maintain attendance sheets of all new employee orientation conducted pursuant to Section VIII of

this Consent Decree, which shall include the names and respective job titles of the attendees, as well as the date, time, duration, and location of the training session.

## X.  REPORTING, MONITORING AND VIOLATIONS

1.  Reports

a.  Compliance Reports.  Six, twelve, twenty-four, and thirty-six months following the entry of this Consent Decree, Swedish Medical Center shall prepare a written report ("Report") regarding its efforts to comply with this Consent Decree.  Each Report must state the identity of each deaf or hard of hearing Patient or Companion in a manner that appropriately protects their confidentiality and the auxiliary aid(s) or service(s) provided to the individual(s), and whether VIS or on-site interpreters were used.  Such reports shall be reviewed by Swedish Medical Center personnel charged with compliance with the ADA and Section 504 and maintained for five years. In the event that Swedish Medical Center does not provide the particular auxiliary aid(s) or service(s) requested by a Patient or Companion, or provides no auxiliary aid(s) or service(s), the Report must state (a) the procedure followed by Swedish Medical Center in determining whether to provide auxiliary aids and services to the Patient or Companion and (b) Swedish Medical Center's reasons for not providing the particular auxiliary aid(s) or service(s) requested by the Patient or Companion, including an explanation regarding which aid or service was requested and what, if any, aid or service was provided. Swedish Medical Center shall maintain appropriate records, including, but not limited to, those described in this Consent Decree, to document the information contained in the Report.

2.  Complaints. During the term of this Consent Decree, if Plaintiff's counsel receives any complaints regarding Swedish Medical Center's alleged failure to provide Auxiliary Aids and Services, Plaintiff's counsel will notify Swedish Medical Center's Risk Manager in writing within thirty (30) days of receipt of the notice from Plaintiff's counsel, Defendant will provide a written response to the complaint and provide all non-privileged reports related to the incidents described in the complaints.  All efforts must be made to protect the privacy interests of the individuals involved

3.  Violation of Consent Decree.

For any violation of this Consent Decree, Plaintiff's counsel may bring an action in this Court to enforce this agreement.  All remedies available under the ADA and Section 504 shall be available in an enforcement action brought under this Consent Decree.

## XI. DAMAGES AND ATTORNEYS' FEES AND COSTS

1.      *Defendant will pay Plaintiff Daisy Midthun damages as specified in the parties'*
Settlement Release within thirty days of the date of this Consent Decree.  The parties
agree that terms regarding the payment of damages will be kept confidential except as
needed for legitimate business and tax purposes.

2.      Plaintiffs are deemed to be the prevailing party for purposes of this Consent
Decree, and Defendant will pay attorneys' fees and costs as set forth in the parties'
Settlement Release within thirty days of this Consent Decree.  The parties agree that
terms regarding the payment of damages will be kept confidential except as needed for
legitimate business and tax purposes.

## XII. MISCELLANEOUS

1.      Duration of the Consent Decree. This Consent Decree shall remain in effect for
three years from the date of this Consent Decree or until any action brought to enforce
this Consent Decree is resolved after which time its provisions will be terminated and
the Complaint dismissed with prejudice.  This Court retains jurisdiction over this case for
the purpose of deciding any issue that may arise under this Consent Decree, and for
purposes of enforcement of this Consent Decree.  Any party may bring such issues
before the Court by filing an appropriate motion.

2.      Entire Consent Decree. This Consent Decree and Settlement Release
constitutes the entire agreement by the parties and no other statement, promise, or
agreement, either written or oral, made by any party or agents of any party, that is not
contained in this written Consent Decree, including its attachments, shall be
enforceable.

3.      Binding Effect. This Consent Decree is final and has binding effect on the
Parties, including all principals, agents, executors, administrators, representatives,
employees, successors in interest, beneficiaries, assigns, heirs and legal
representatives thereof. Swedish Medical Center has a duty to so inform any successor
in interest and to timely notify all Parties of all such successors in writing. In the event
Swedish Medical Center seeks to transfer or assign all or part of its interests in any
facility covered by this Consent Decree, and the successors or assign intends on
carrying on the same or similar use of the facility, as a condition of sale Swedish
Medical Center shall obtain the written accession of the successor or assign to any
obligations remaining under this Consent Decree for the remaining term of this Consent

Decree.

4.      Non-Waiver. Failure by any party to seek enforcement of this Consent Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

5.      Severability. In the event that the Court determines that any provision of this Consent Decree is unenforceable, such provision shall be severed from this Consent Decree and all other provisions shall remain valid and enforceable, provided, however, that if the severance of any such provision materially alters the rights or obligations of the Parties hereunder, they shall, through reasonable, good faith negotiations, agree upon such other amendments hereto as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

6.      Compliance with Applicable Laws. Any modification or amendment of this Consent Decree does not affect Swedish Medical Center's independent responsibilities under any applicable Federal, state or local laws or regulations.  It is further understood that the facility may make revisions to the policy attached hereto as Exhibit 1 to comply with regulatory changes or corporate initiatives, and that any such revisions during the course of the consent decree will be submitted to counsel for plaintiff for review and comment. The parties agree to work in good faith to resolve any dispute regarding a change in the policy and, if a resolution cannot be reached, Plaintiffs may bring an action in this Court pursuant to Section X, paragraph 3.

[Exhibit 1 attached]

FOR PLAINTIFFS COLORADO CROSS-DISABILITY COALITION AND DAISY MIDTHUN:

Kevin W. Williams
Carrie Ann Lucas
Andrew C. Montoya
Colorado Cross-Disability Legal Program
655 Broadway, Suite 775
Denver, Colorado 80203
Telephone: (303) 839-1775
TTY: (303) 839-0015
Facsimile: (303) 839-1782
E-mail: kwilliams@ccdconline.org
E-mail: clucas@ccdconline.org
E-mail: amontoya@ccdconline.org

FOR DEFENDANT HCA - HEALTHONE d/b/a SWEDISH MEDICAL CENTER:

Gilbert A. Dickinson, Esq.
Molly Emmetsberger, Esq.
Dickinson, Prud'Homme, Adams & Ingram, LLP
730 17th Street, Suite 730
Denver, CO  80202
Telephone: (303) 571-4428
Facsimile: (303) 571-1604
E-mail: Gdickinson@dpai-legal.com
E-mail: Memmetsberger@dpai-legal.com

Page 17 of 18

DATED:  June __6__, 2011

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

Exhibit 1

| Title: "Effective Communication with Deaf or Hard of Hearing Patients and Companions" |
|---|
| Facility: SWEDISH MEDICAL CENTER |
| Date: |

## I.   PURPOSE STATEMENT:

To implement compliance with Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 which prohibit discrimination on the basis of disability in the delivery of healthcare services. The regulations implementing the Acts require that individuals who are deaf or hard of hearing and companions who are deaf or hard of hearing be provided with auxiliary aids at no cost to allow them an equal opportunity to participate in and benefit from healthcare services. The decision as to the method to be used for communication requires the input of the patient or companion and their choice must be given weight. Failure to properly assess and subsequently provide these services is punishable by fine to the provider.

## II.   RESPONSIBLE PERSONS:

All Medical Center staff.

## III.   DEFINITIONS:

A. Auxiliary aid.

Auxiliary aids and services includes: Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

B. Effective communication. Communication that results in an appropriate level of understanding by the individual who is deaf or hard of hearing.

## IV.   POLICY STATEMENT:

A. FACILITY will provide qualified sign-language interpreters and other auxiliary aids deaf or hard of hearing when necessary to afford such persons an equal opportunity to benefit from the services provided.

B. To achieve that goal, FACILITY employees will inform deaf or hard of hearing patients and the deaf or hard of hearing relatives and companions of patients of the availability, at no cost to them, of interpreters, telecommunication devices for the deaf ("TTY's" or "TDD's"), captioning and other auxiliary aids, and to provide such services promptly upon request.

V.    **PROCEDURE:**

A. 504 Coordinator.

The Risk Manager is the 504 Coordinator is responsible to maintain the appropriate aspects of the Americans with Disabilities Act, Sections III and IV.

B. Deaf and Hard of Hearing.

1. Any patient, and any family member or friend of a patient participating in treatment discussions and decision-making, who is deaf or hard-of-hearing shall be informed in writing of the availability at no cost of qualified interpreters and other auxiliary aids and services to meet his or her communications needs. Such notice shall be provided at the time of admission, appointment scheduling or arrival at the Emergency Department. All facility personnel will use the attached "Notice of Services for Deaf and Hard-Of-Hearing Persons at FACILITY" to inform such persons of services and to determine what services will be needed.
2. If you recognize or have any reason to believe a patient, relative, friend or companion of a patient, or any other person using facility services is deaf or hard-of-hearing, you must offer to call a sign language interpreter for that person and you must advise the person that the sign language interpreter and/or other appropriate auxiliary aids and services will be provided at facility expense. This offer and advice must likewise be made to any overt request for a sign language interpreter and/or any other auxiliary aids or services.
3. If a patient/resident/surrogate decision-maker requests an interpreter, FACILITY must legally provide the service.
   (a) The clinical coordinator or designee or departmental person in charge should make the call to the Department to request assistance.
   (b) Except in an emergency situations involving an imminent threat to safety or welfare of an individual or the public, Swedish Medical Center staff will not request a family member or companion of an individual who is deaf or hard of hearing to interpret for the individual. Any request to use family or friends by the hearing-impaired person following the offer by the provider to provide an interpreter will be documented in the patient record. This request will not be honored if the information that needs to be conveyed requires specialized terminology or procedures except this request may be honored if the facility determines and documents that no such specialized knowledge is needed or the individual insists after all efforts have been made to inform the individual

of the need for a qualified sign language interpreter who is not a family member or friend.  This will be documented in the patient record.

(c) No payment will be made by the provider when the person volunteers his or her own resources.

(d) The provider should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the facility, provided that the method chosen results in effective communication.

4.  For scheduled admissions and appointments, arrangements must be made in advance to ensure that an interpreter will be present when the deaf or hard-of-hearing person arrives for treatment.

5.  All contacts with interpreting agencies must be documented in patient records.

6.  If a person uses sign language, all medical and psychiatric evaluations or discussions regarding a patient's symptoms, treatment (including individual and group psychotherapy), diagnosis, progress and prognosis must be communicated through the use of a qualified sign language interpreter.

7.  Additional situations in which an interpreter may be required include, but are not limited to, the following:

(a) determining a patient's history or description of ailment or injury;

(b) obtaining informed consent or permission for treatment;

(c) provision of patient's rights;

(d) explanation of living wills or powers of attorney (or their availability)

(e) diagnosis or prognosis of ailments or injuries;

(f) explanation of procedures, tests, treatment, treatment options or surgery;

(g) explaining the administration and side effects of medications, including side effects and food or drug interactions;

(h) discharge instructions or planning;

(i) explaining and discussing advance directives;

(j) explaining blood donations or apheresis;

(k) explaining follow-up treatment, test results, or recovery;

(l) discussing billing and insurance issues; and

(m) during educational presentations, such as classes concerning birthing, nutrition, CPR and weight management.

The foregoing list of circumstances is neither exhaustive nor mandatory and does not imply that there are not other circumstances when it may be necessary to provide interpreters for effective communication.

8.  Family members, friends, advocates, case managers and other people who are at the facility to support the patient are not appropriate or qualified interpreters, regardless of their sign language abilities.  Asking such persons to interpret denies the patient the support they need and compromises the accuracy and effectiveness of FACILITY staff communications with the patient.  If a deaf or hard-of-hearing person nevertheless refuses FACILITY's offer of a free qualified interpreter and prefers to use a friend or family member to interpret, the facility shall secure a

written "Waiver of Interpreter Services," which appears on the opposite side of the notice of services form attached here.

9. The FACILITY's may have pictograph flash cards available, which may be used to facilitate effective communication in cases of an emergency and while awaiting an interpreter.

10. Telephone contact from or to persons who are deaf or hard-of-hearing may be made through the Patient Advocate. Telecommunication Devices for Deaf people (TDD) which allow for direct phone communication for the patient or hearing impaired relative of patient are located at PBX operators/ communications department. Telecommunications can provide a TDD for a patient's room, upon request.

11. All televisions at FACILITY are equipped with built-in decoders and FACILITY staff shall assist patients in activating the captioning.

12. If you have any questions regarding the implementation of this policy, contact your supervisor, or the Risk Manager.

C.  Complaints.

1.  Complaints concerning 504 accommodations will be documented on the Medical Center Complaint form. If the complaint involves physical properties, the form should be sent to the 504 Coordinator for resolution.

2.  Complaints concerning the provision of Auxiliary Aids should be reviewed and acted upon by the appropriate Manager/Director or designee for resolution. A copy of the completed form is sent to the Risk Manager.

3.  All complaints will be investigated to determine validity. The person making the complaint has the right to representation by another person. All interested parties and their representatives shall have an opportunity to submit relevant information to the complaint.

4.  Resolution of the complaint will be accomplished as expeditiously as possible.

5.  "Undue" Burden  means significant difficulty or expense and will be determined on a case-by-case basis considering the following:
    (a) The nature and cost of the action needed under this part;
    (b) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;
    (c) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;
    (d) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and
    (e)If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

VI.   **DOCUMENTATION:**

The contacted staff member will document in the medical record that assistance has been provided or offered.

VII.   **REFERENCES:**

AT&T Language Line Service Guidelines
Comprehensive Accreditation Manual for Hospitals, 2000
Rehab Act of 1973, Section 504
American Disabilities Act of 1990

4/1/2011

**NOTICE OF SERVICES FOR DEAF AND HARD-OF-HEARING PERSONS
AT SWEDISH MEDICAL CENTER**

Our staff wants to communicate effectively with you and your family members. Please fill out this paper and return it to Swedish Medical Center's employee. **All of the services are free of charge to you.**

1. Would a sign language interpreter help us communicate effectively with you?

    YES _____     NO _____

2. If you can check YES, we will get, at no cost to you, a sign language interpreter to be at the facility unless you fill out the waiver form on the back of this paper.

    Do you wish any of these free services?        YES _____     NO _____

    A TTY and Light Signaler                        YES _____     NO _____

    An Amplified Telephone Receiver                 YES _____     NO _____

    Telephone Captioning                            YES _____     NO _____

    Computer Assisted Real Time
    Captioning (CART) (note the use of
    CART is restricted to certain settings)         YES _____     NO _____

    Oral interpreter (if available)                 YES _____     NO _____

    Other (please explain)

    _____
    _____
    _____
    _____
    _____
    _____

    _____  _____  _____ a.m./p.m.
    Signature                     Date         Time

    A copy of Swedish Medical Center's policy for effective communications with deaf and hard-of-hearing persons is available without any charge upon request. Please initial here if you would like a copy of this policy. _____ (Initials)

4/1/2011

## WAIVER OF INTERPRETER SERVICES

**COMPLETE THIS SIDE ONLY IF YOU CHECKED YES TO QUESTION 1 ON THE REVERSE SIDE OF THIS DOCUMENT AND <u>DO NOT</u> WANT SWEDISH MEDICAL CENTER TO PROVIDE A SIGN LANGUAGE INTERPRETER**

I, _____, understand that I have a right to be provided a free qualified sign language interpreter by Swedish Medical Center to communicate with its staff and doctors effectively.  However, **<u>I DO NOT WANT A FREE QUALIFIED SIGN LANGUAGE INTERPRETER</u>** to be provided to me by Swedish Medical Center because:

I prefer to communicate using:

_____

_____

_____

OR

I prefer to use sign language interpreter sources provided by:

Name _____

Address _____

Phone _____

I understand that at any time I can change my mind about this request by telling Swedish Medical Center's employee that I want an interpreter to be provided by Swedish Medical Center.

4/1/2011